UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

ZONNA A. CARROLL,

Plaintiff,

vs.

MICHAEL J. ASTRUE, Commissioner of Social Security,

Defendant.

No. CV-11-445-LRS

**ORDER RE SUMMARY JUDGMENT MOTIONS**

**BEFORE THE COURT** are Plaintiff's Motion For Summary Judgment (ECF No. 14) and the Defendant's Motion For Summary Judgment (ECF No. 19).

**JURISDICTION**

Zonna A. Carroll, Plaintiff, applied for Title XVI Supplemental Security Income benefits ("SSI") on March 24, 2009. The applications were denied initially and on reconsideration. Plaintiff timely requested a hearing and a hearing was held on August 12, 2010, before Administrative Law Judge (ALJ)

James W. Sherry. Plaintiff, represented by counsel, appeared and testified at this hearing. Also testifying was Thomas Polsin, a vocational expert. On September 1, 2010, the ALJ issued a decision denying benefits. The Appeals Council denied a request for review and the ALJ's decision became the final decision of the Commissioner. This decision is appealable to district court pursuant to 42 U.S.C. §1383(c)(3).

**STATEMENT OF FACTS**

The facts have been presented in the administrative transcript, the ALJ's decision, the Plaintiff's and Defendant's briefs, and will only be summarized here. At the time of the Commissioner's final decision, Plaintiff was 44 years old. She has a limited education and is able to communicate in English. She has no past relevant work experience. Plaintiff alleges disability since March 24, 2009 due to a combination of physical and mental impairments.

**STANDARD OF REVIEW**

"The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence, 42 U.S.C. § 405(g)...." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Beane v. Richardson*, 457 F.2d 758, 759 (9th Cir. 1972); *Mark v. Celebrezze*,

348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989), quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980); *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir. 1982).

It is the role of the trier of fact, not this court to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

A decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).

## ISSUES

Plaintiff argues the ALJ erred in finding that she does not have a "severe" neck impairment and a "severe" mental impairment which, in turn, led the ALJ to make an improper determination regarding her residual functional capacity (RFC), and to ask an incomplete hypothetical of the vocational expert (VE).

## DISCUSSION

### SEQUENTIAL EVALUATION PROCESS

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A). The Act also provides that a

claimant shall be determined to be under a disability only if her impairments are of such severity that the claimant is not only unable to do her previous work but cannot, considering her age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. *Id.*

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S.Ct. 2287 (1987). Step one determines if she is engaged in substantial gainful activities. If she is, benefits are denied. 20 C.F.R. §416.920(a)(4)(i). If she is not, the decision-maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §416.920(a)(4)(iii); 20 C.F.R. § 404 Subpart P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step which determines whether the impairment prevents the claimant from performing work she has performed in the past. If the claimant is able to perform her previous work, she is not disabled. 20 C.F.R. §416.920(a)(4)(iv). If the claimant cannot perform this work, the fifth and final step in the process determines whether she is able to perform other work in the national economy in view of her age, education and work experience. 20 C.F.R. §416.920(a)(4)(v).

The initial burden of proof rests upon the claimant to establish a prima

facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ALJ'S FINDINGS**

The ALJ found that Plaintiff has the following “severe” impairments: lumbar degenerative disk disease; hepatitis C; chronic obstructive pulmonary disease/asthma; status post ganglion cyst removal, both wrists; migraine headaches; mild gastritis; and drug and alcohol addiction. The ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 C.F.R. § 404 Subpart P, App. 1. The ALJ found that plaintiff has the residual functional capacity (RFC) to perform work less than the full range of “light” work. See 20 C.F.R. §416.967(b). The ALJ found this RFC did not preclude plaintiff from performing other jobs, identified by the VE, existing in significant numbers in the national economy. Accordingly, the ALJ concluded the Plaintiff is not disabled.

**“SEVERE” IMPAIRMENTS**

A “severe” impairment is one which significantly limits physical or mental ability to do basic work-related activities. 20 C.F.R. §416.920(c). It must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. It must be established by medical evidence consisting of signs,

symptoms, and laboratory findings, not just the claimant's statement of symptoms. 20 C.F.R. §416.908. "Basic work activities" are the abilities and aptitudes to do most jobs, including: 1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; 2) capacities for seeing, hearing, and speaking; 3) understanding, carrying out, and remembering simple instructions; 4) use of judgment; 5) responding appropriately to supervision, co-workers and usual work situations; and 6) dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b) and 416.921(b).

**A. CERVICAL IMPAIRMENT**

In his decision, the ALJ stated the following:

> A nonsevere impairment of neck/shoulder and arm pain has been discussed. However, an MRI of the cervical spine, completed on October 2, 2009, revealed only mild findings. An examination of the claimant's neck was normal with satisfactory range of motion. The left shoulder indicated some pain over the supraspinatus tendon but the range of motion was normal.

(Tr. at p. 23).

Plaintiff contends the MRI "demonstrates significant abnormalities contrary to the ALJ's comments" and therefore, the ALJ erred in failing to find the Plaintiff has a "severe" cervical impairment.

The MRI was ordered after Plaintiff visited the Deer Park Family Care Clinic on September 21, 2009. Plaintiff complained of neck pain during that visit. A note from the visit indicates the neck pain was "CAUSING HEADACHES. RECOMMEND MRI FOR FURTHER WORK-UP. LAB ORDERS: MRI." (Tr. at p. 459). This appears to have been the first specific reference to neck pain in the record. A musculoskeletal exam performed on the same date indicated: "HEAD AND NECK: Normal to inspection and palpation

with satisfactory motion. Strength adequate with normal stability." (Tr. at p. 458).

The MRI itself revealed: "[m]ultilevel degenerative changes in the cervical spine . . . most pronounced at C5-6 and C6-7;" "[a]t C5-6, there is mild bilateral neural foraminal stenosis;" "[a]t C6-7. There is mild bilateral neural foraminal stenosis." (Tr. at p. 456). It was noted that there were "[d]egenerative changes elsewhere, not causing spinal canal or neural foraminal stenosis." (Tr. at p. 456). These are not "significant abnormalities," as evidenced by the fact that in the Deer Park Family Care Clinic records post-dating the MRI, there is only passing reference to the MRI results and no indication of particular difficulty with either Plaintiff's neck or shoulder.

When Plaintiff visited the Deer Park Family Care Clinic on October 19, 2009, a musculoskeletal exam indicated: "HEAD AND NECK: Normal to inspection and palpation with satisfactory range of motion. Strength adequate with normal stability." With regard to her "EXTREMITIES," the following was noted: "L SHOULDER WITH PAIN POSTERIOR OVER THE SUPRASPINATUS TENDON. ROM NORMAL. SOME PAIN RADIATION DOWN THE ARM FROM THE POSTERIOR ASPECT OF THE SHOULDER." (Tr. at p. 677). These results would be repeated in conjunction with Plaintiff's visits to the Deer Park Family Care Clinic on December 14, 2009 (Tr. at p. 667), January 11, 2010 (Tr. at p. 663), February 8, 2010 (Tr. at p. 659), March 8, 2010 (Tr. at pp. 651-52), April 6, 2010 (Tr. at pp. 648-49), May 4, 2010 (Tr. at p. 645), June 2, 2010 (Tr. at pp. 641-42), July 2, 2010 (Tr. at p. 639), and July 27, 2010 (Tr. at p. 635), On November 16, 2009, May 4, 2010, and July 2, 2010, the following notation appears in the clinic records: "The neck pain has not changed. The patient denies an increase in stiffness, radiation of pain, limitation of motion, or a recent flare. Currently the patient is off all medication." (Tr. at pp. 637, 643 and 669).

Deer Park Family Care Clinic records prior to September 21, 2009 do not indicate anything particular with regard to Plaintiff's neck, but are consistent with subsequent records in indicating a normal range of motion (ROM) in Plaintiff's shoulder. (Tr. at pp. 304 and 477).

Records from two visits to the Holy Family Hospital Emergency Center in February 2010 indicate the Plaintiff denying having a stiff neck (Tr. at p. 558), and then noticing "maybe just a trace of stiffness of her neck." (Tr. at p. 552). A musculoskeletal exam revealed "[n]ormal range of motion with no tenderness, no obvious masses, or swelling." (Tr. at p. 553).

Based on the foregoing, the court concludes that "substantial evidence" supports the ALJ's finding that the Plaintiff does not have a "severe" medically determinable cervical impairment significantly limiting her physical ability to perform basic work-related activities.

**B. MENTAL IMPAIRMENT**

Because of the April 2009 psychological report and evaluation of Debra D. Brown, Ph.D., (Tr. at pp. 541-49), Plaintiff takes issue with the ALJ's finding that she does not have a "severe" mental impairment.

Plaintiff filed a previous application for SSI benefits which was denied in a decision issued by ALJ Mary Bennett Reed on February 20, 2007. In that decision, ALJ Reed found that Plaintiff did not have a medically determinable mental impairment, absent substance abuse/dependence. (Tr. at pp. 96 and 100). This finding was based, in part, on hearing testimony offered by R. Thomas McKnight, Ph.D., a psychologist who examined the Plaintiff's mental health record up to that point. (Tr. at pp. 93 and 96). This record, dating from 1996, contained opinions of "[s]everal examiners . . . that [Plaintiff] was malingering memory function, cognitive functioning, and psychological symptoms." (Tr. at p. 96). Dr. McKnight testified that the record showed

Plaintiff's "performance on psychological examinations has varied, is inconsistent, and resultant diagnoses were questionable," and "[h]e noted problems with motivation on testing, lack of effort on Trailmaking tests, drug seeking behavior, stating she can't read or write, yet taking the MMPI . . . with no indication this was by tape." (Tr. at p. 93).

ALJ Reed concluded that a post-hearing consultative psychological exam of the Plaintiff by Jay Toews, Ed.D., confirmed Plaintiff did not suffer from a medically determinable mental impairment. (Tr. at pp. 93 and 96). "Dr. Toews was able to review the entire, voluminous record here, as well as perform evaluation and testing, and determined that claimant's main diagnoses are polysubstance abuse/dependence and malingering." (Tr. at p. 96). Among other things, Dr. Toews noted that although Plaintiff stated she was unable to read and write, she was able to complete routine information forms, (Tr. at p. 93), and was able to read and correctly answer a verbal reasoning problem despite her claim that she was illiterate. (Tr. at p. 94).

ALJ Reed summed up her finding as follows: "After multiple psychological evaluations, both Dr. McKnight and Dr. Toews reported that the longitudinal record failed to support any severe mental impairment absent substance use and malingering (which is not a mental impairment but a volitional exaggeration) . . . ." (Tr. at p. 100). After the Appeal Council denied review of ALJ Reed's decision denying benefits, Magistrate Judge Hutton affirmed that denial in an order filed December 1, 2010. (ECF No. 20 in CV-09-256-JPH). Magistrate Judge Hutton found that "[t]he ALJ reasonably concluded plaintiff has no medically determinable mental impairment absent the effect of drugs and alcohol and the findings are supported by substantial evidence." (ECF No. 20 at p. 12; see also discussion at pp. 7-12).

ALJ Sherry, in his more recent decision denying benefits, rejected the 2009 evaluation of Dr. Brown, in part, because of the prior decision of ALJ

Reed and the analysis of the mental health record up to that point. (Tr. at p. 25). Dr. Brown diagnosed the Plaintiff with "Mild Mental Retardation" based on her having a full scale IQ of 61 which, Dr. Brown opined, was alone sufficient to render Plaintiff disabled and unable to work. (Tr. at p. 549). Dr. Brown indicated that Plaintiff was severely limited in her ability to exercise judgment and make decisions, and markedly limited in her abilities to understand, remember and follow complex instructions, learn new tasks, and perform routine tasks. (Tr. at p. 543). She also indicated Plaintiff was severely limited in her abilities to relate appropriately to co-workers and supervisors, interact appropriately in public contacts, and to respond appropriately to and tolerate the pressures and expectations of a normal work setting, and markedly limited in her ability to control physical or motor movements and maintain appropriate behavior. (Tr. at p. 543).

ALJ Sherry observed that Plaintiff was subject to psychological evaluations in January and April 2008 by Mahlon Dalley, Ph.D., Sean Caldwell, M.S. candidate, and Brooke Sjostrom, M.S., L.M.H.C. IQ testing on January 8, 2008 revealed a full scale score of 57, and testing on April 3, 2008 revealed a full scale score of 61. A memory malingering test, however, revealed the Plaintiff was purposefully attempting to appear impaired, using deceptive practices. As such,, she was diagnosed with malingering without a diagnosable psychological disorder. (Tr. at pp. 24; 256-265). ALJ Sherry noted that evaluations were additionally completed on January 9, 2008 and April 3, 2008 exclusively by Ms. Sjostrom. (Tr. at p. 24). While the January 2008 evaluation specifically noted the Plaintiff's IQ scores were "not considered valid" and did not find any limitations pursuant to the malingering diagnosis (Tr. at pp. 252-255), the April 2008 evaluation diagnosed the Plaintiff with posttraumatic stress disorder, undifferentiated somatoform disorder, opioid dependence and mild mental retardation, and indicated these

caused the Plaintiff marked limitations both cognitively and socially. (Tr. at pp. 266-269).

ALJ Sherry found that "recent evidence was consistent with [Plaintiff's] long-term pattern of malingering/embellishment and did not provide sufficient evidence of substantial change from the time of the prior [ALJ] decision," and as such, "the conclusion of no medically determinable impairment/no severe mental impairment was retained from the prior [ALJ's] findings." (Tr. at p. 25). He noted that the January 2008 evaluation of Ms. Sjostrom found evidence of malingering, yet the assessment just four months later in April 2008 revealed marked to extreme limitations and therefore, was inconsistent with the January 2008 evaluation that found the Plaintiff's symptoms were exaggerated. ALJ Sherry also noted that the prior ALJ decision pointed out that Plaintiff was able to read and correctly answer a verbal reasoning problem. (Tr. at pp. 25 and 94). The ALJ concluded this invalidated Plaintiff's claims to Dr. Dalley, Ms. Sjostrom and Mr. Caldwell that she was illiterate (Tr. at p. 271),thereby validating the malingering diagnosis and further diminishing Plaintiff's credibility. (Tr. at p. 25). The ALJ found that:

> Collectively, these assessments reflect a pattern of exaggerated symptoms thus negating Dr. Brown's findings that the the [Plaintiff's] mild mental retardation status would limit her ability to work. Without objective testing that negates the malingering findings or validates the severe to extreme limitations or low IQ scores, the undersigned finds the malingering diagnosis valid and presumes the extreme limitations described are based on the [Plaintiff's] subjective reporting.

(Tr. at p. 25).

An ALJ must provide specific and legitimate reasons, based on substantial evidence in the record, for rejecting the opinion of a treating or examining physician. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). Dr. Brown's opinion as to the existence of a "severe" mental impairment, causing marked to severe functional limitations, is controverted by other

examining psychologists (i.e., McKnight, Toews and Dalley). ALJ Sherry offered specific and legitimate reasons, based on substantial evidence in the record, for rejecting Dr. Brown's opinion. There is more than a scintilla of evidence in the record supporting the ALJ's conclusion that Plaintiff does not have a "severe" medically determinable mental impairment. The ALJ rationally interpreted the evidence in the record to arrive at this conclusion.

**VE HYPOTHETICAL**

Because the ALJ did not err in finding that Plaintiff does not have a "severe" medically determinable mental and/or cervical impairment, his conclusion as to Plaintiff's residual functional capacity- a limited range of light work- is supported by substantial evidence in the record. (Tr. at p. 27). As required, the ALJ considered the Plaintiff's non-severe medically determinable impairments (i.e., nonsevere cervical impairment) in arriving at his conclusion. 20 C.F.R. §§ 416.923 and 416.945(a)(2). The limitations the ALJ set forth in the hypothetical question he posed to the vocational expert during the administrative hearing (Tr. at pp. 66-68) match the Plaintiff's residual functional capacity. The hypothetical was not incomplete. Based on that hypothetical, the vocational expert identified other jobs existing in significant numbers in the national economy which an individual with the Plaintiff's residual functional capacity could perform.

**CONCLUSION**

Substantial evidence supports the Commissioner's decision that Plaintiff was not disabled for any continuous 12 month period after March 24, 2009, the alleged onset date. Accordingly, Defendant's Motion For Summary Judgment (ECF No. 19) is **GRANTED** and Plaintiff's Motion For Summary Judgment (ECF No. 14) is **DENIED**. The Commissioner's decision denying benefits is

**AFFIRMED**.

**IT IS SO ORDERED.** The District Executive shall enter judgment accordingly and forward copies of the judgment and this order to counsel.

**DATED** this __14th___ of December, 2012.

***s/Lonny R. Suko***

LONNY R. SUKO
United States District Judge